# United States District Court
## For the Northern District of New York

Adrian Jones,

          Plaintiff,

    v.

City of Syracuse, Sgt. James Milana, P.O.
Gordon Quonce, P.O. Taras Senenko, and
P.O. Derrick Ettinger,

          Defendants.

Docket No. 5:20-cv-00340

# MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.    Plaintiff's state law malicious prosecution claim must survive because he received a
favorable termination of the underlying criminal proceeding...................................................... 3

II.   Plaintiff's denial of right to fair trial/fabrication of evidence claim must survive because,
under *McDonough v. Smith*, *Heck v. Humphrey*, and Second Circuit precedent governing the
elements of § 1983 evidence-fabrication claims, which *McDonough* expressly left unchanged,
plaintiff's complaint states a viable claim................................................................................. 7

A.    *McDonough* did not add "favorable termination" as an  element of a § 1983 fair-
trial/evidence-fabrication claim .............................................................................................. 7

B.    Even were one to construe *McDonough* as having added "favorable termination" as an
element of a fabricated-evidence claim, such an element is not equivalent to "favorable
termination" as understood in the context of a malicious prosecution claim ........................... 10

C.    Imposing the federal malicious prosecution's requirement of a termination indicative of
innocence on fair-trial claims would lead to intolerable practical outcomes............................. 20

CONCLUSION................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Agostini v. Felton*,
   521 U.S. 203 (1997) .................................................................................... 10

*Bellamy v. City of New York*,
   914 F.3d 727 (2d Cir. 2019) ........................................................................ 10

*Bermudez v. City of New York*,
   790 F.3d 368 (2d Cir. 2015) ........................................................................ 12

*Bradford v. Scherschligt*,
   803 F.3d 382 (9th Cir. 2015) ....................................................................... 19

*Cantalino v. Danner*,
   96 N.Y.2d 391 (2001) .................................................................................... 6

*City of Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981) .................................................................................... 20

*Colon v. City of Rochester*,
   419 F. Supp. 3d 586 (W.D.N.Y. 2019) ....................................................... 18

*Conway v. Village of Mount Kisco*,
   750 F.2d 205 (2d Cir. 1984) ........................................................................ 12

*Curto v. Roth*,
   2003 U.S. Dist. LEXIS 29799 (N.D.N.Y. 2003) .......................................... 6

*Davis v. City of New York*,
   2011 NY Slip Op 31567(U) (Sup. Ct., Queens Cnty.) ................................. 3

*Dufort v. City of New York*,
   874 F.3d 338 (2d Cir. 2017) ................................................................... 10, 11

*Edwards v. Balisok*,
   520 U.S. 641 (1997) .................................................................................... 14

*Fields v. Wharrie*,
   740 F.3d 1107 (7th Cir. 2014) ..................................................................... 20

*Garnett v. Undercover Officer C0039*,
   838 F.3d 265 (2d Cir. 2016) ............................................................. 10, 11, 12

*Giglio v. United States*,
   405 U.S. 150 (1972) .................................................................................... 11

*Graham v. City of New York*,
   2018 U.S. Dist. LEXIS 34554 (E.D.N.Y. 2018) ........................................... 4

*Jackson v. Barnes*,
   749 F.3d 755 (9th Cir. 2014) ....................................................................... 14

*Kislowski v. Kelley*,
  2020 U.S. Dist. LEXIS 17018 (N.D.N.Y. 2020) ................................................. 3, 4

*Lanning v. City of Glens Falls*,
  908 F.3d 19 (2d Cir. 2018) ................................................................................ 12, 16

*Manuel v. City of Joliet*,
  137 S. Ct. 911 (2017) ............................................................................. 10, 15, 16

*Manuel v. City of Joliet*,
  903 F.3d 667 (7th Cir. 2018) ......................................................................... 16

*Martinez v. City of Schenectady*,
  97 N.Y.2d 78 (2001) ........................................................................................ 3

*McKithen v. Brown*,
  481 F.3d 89 (2d Cir. 2007) ............................................................................. 13, 14

*Muhammad v. Close*,
  540 U.S. 749 (2004) ......................................................................................... 13, 14

*People v. Jones*,
  174 A.D.3d 1532 (4th Dept. 2019) ................................................................. 5, 6

*Peralta v. Vasquez*,
  467 F.3d 98 (2d Cir. 2006) ............................................................................. 13

*Poventud v. City of New York*,
  750 F.3d 121 (2014) ......................................................................................... 11, 14

*Rehberg v. Paulk*,
  566 U.S. 356 (2012) ......................................................................................... 15

*Restivo v. Hessemann*,
  846 F.3d 547 (2d Cir. 2017) ........................................................................... 20

*Ricciuti v. New York City Transit Auth.*,
  124 F.3d 123 (2d Cir. 1997) ........................................................................... 12, 21

*Roberts v. City of Fairbanks*,
  947 F.3d 1191 (9th Cir. 2020) ........................................................................ 16, 17

*Ross v. City of New York*,
  2019 U.S. Dist. LEXIS 169762 (E.D.N.Y 2019) ......................................... 17, 18

*Salvodon v. City of New York*,
  55 Misc. 3d 1210(A) (Sup. Ct., Queens Cnty. 2017) .................................... 3

*Savory v. Cannon*,
  947 F.3d 409 (7th Cir. 2020) .......................................................................... 16, 17

*Simmons v. United States*,
  390 U.S. 377 (1968) ......................................................................................... 21

*Simon v. City of New York*,
  2020 U.S. Dist. LEXIS 47919 (E.D.N.Y. 2020) ...................................... 11, 12, 15, 18

*Singleton v. City of New York*,
  632 F.2d 185 (2d Cir. 1980) ................................................................. 12

*Skinner v. Switzer*,
  562 U.S. 521 (2011) ............................................................................... 14

*Smalls v. City of New York*,
  181 F. Supp. 3d 178 (E.D.N.Y. 2016) ............................................... 4, 5

*Thompson v. City of New York*,
  2020 U.S. Dist. LEXIS 77663 (S.D.N.Y. 2020) ................................... 6

*United States v. Agurs*,
  427 U.S. 97 (1976) ................................................................................. 11

*Victory v. Pataki*,
  814 F.3d 47 (2d Cir. 2016) ................................................................... 11

*Wellner v. City of New York*,
  393 F. Supp. 3d 388 (S.D.N.Y. 2019) ................................................. 18

*Wilkinson v. Dotson*,
  544 U.S. 74 (2005) ................................................................................. 14

*Zahrey v. Coffey*,
  221 F.3d 342 (2d Cir. 2000) ................................................................. 20

**Other Authorities**

Amicus Br. of ACLU et al. in *Smalls v. City of New York*,
  20-1099 (2d Cir. 2020) ......................................................................... 21

Amicus Br. of Ctr. on the Admin. of Crim. Law at NYU School of Law et al. in *McDonough v. Smith*,
  2019 U.S. S. Ct. Briefs LEXIS 845 ..................................................... 20

Brief for the Petitioner, *McDonough v. Smith*,
  139 S. Ct. 2149 (2019) ............................................................................ 8

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................... 1, 6, 21

# United States District Court
## For the Northern District of New York

Adrian Jones,

     Plaintiff,

  v.

City of Syracuse, Sgt. James Milana, P.O. Gordon Quonce, P.O. Taras Senenko, and P.O. Derrick Ettinger,

     Defendants.

Docket No. 5:20-cv-00340

**Memorandum of Law in Partial Opposition to Defendants' Motion to Dismiss**

## PRELIMINARY STATEMENT

  Plaintiff, Adrian Jones, submits this Memorandum of Law in partial opposition to defendants' motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff opposes the instant motion to the extent that it seeks dismissal of plaintiff's state-law cause of action for malicious prosecution and plaintiff's cause of action for denial of a right to fair trial pursuant to 42 U.S.C. § 1983.

  Defendants' motion to dismiss plaintiff's state-law malicious prosecution claim must be denied.  Crediting the allegations in plaintiff's complaint, as this Court must on defendants' 12(b)(6) motion, the underlying criminal proceeding resulted in a "favorable termination" as that term is understood within the meaning of a state-law malicious prosecution claim. Unlike the cases cited by defendants, wherein the plaintiffs never disputed that they possessed the suppressed evidence and never otherwise maintained their innocence, plaintiff herein adamantly

denies that he ever possessed the gun that was suppressed, and he steadfastly maintains his innocence of the crimes with which he was charged.

Defendants' motion to dismiss plaintiff's denial of right to a fair trial claim also must be denied. First, defendants incorrectly assert that *McDonough v. Smith*, 139 S. Ct. 2149 (2019) added "favorable termination" as an element of a cause of action for denial of right to a fair trial. Second, even were one to interpret *McDonough* as adding such an element, "favorable termination" within the meaning of a fair trial/evidence fabrication claim is not the same as "favorable termination" within the meaning of a federal malicious prosecution claim. To establish that a criminal proceeding terminated favorably for the purposes of a fair trial/evidence fabrication claim, it is sufficient that the plaintiff demonstrate, in accordance with *Heck v. Humphrey*, 512 U.S. 477 (1994), that his underlying conviction was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See Heck*, 512 U.S. at 486.[1]

---

[1]     Contrary to defendants' argument, *see* City's Memorandum of Law in Support, at p. 23, plaintiff contends that the pleadings adequately set forth all of the elements of the causes of action. However, in light of defendants' stated position, should this Court disagree as to the sufficiency of the pleadings as to one or more of the causes of action, plaintiff respectfully respects that the Court grant plaintiff leave to replead those causes of action.

# ARGUMENT

I. **Plaintiff's state law malicious prosecution claim must survive because he received a favorable termination of the underlying criminal proceeding**

Defendants argue that since the criminal charges against plaintiff were dismissed because evidence was suppressed, and not because of a more explicit indication of innocence, the criminal proceeding did not terminate favorably to plaintiff for the purposes of his state-law claim for malicious prosecution.  In so arguing, defendants rely on cases in which, unlike here, there was no dispute that the plaintiff actually possessed the evidence whose suppression resulted in the termination and/or in which the plaintiff did not otherwise explicitly maintain his innocence. *See, e.g.*, *Salvodon v. City of New York*, 55 Misc. 3d 1210(A) (Sup. Ct., Queens Cnty. 2017) ("Petitioner has not claimed innocence and has not disputed that the ring that was retrieved from him in the hospital belonged to one of the victims of the home invasion and that he in fact robbed the victim of that ring…."); *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 81 (2001) ("[D]efendants—Schenectady police officers—entered the residence of plaintiff Melody Martinez, seized four ounces of cocaine from *a dresser drawer in her bedroom* and arrested her.") (emphasis added); *Davis v. City of New York*, 2011 NY Slip Op 31567(U), ¶ 4 (Sup. Ct., Queens Cnty.) (noting that the plaintiff did not deny possessing marijuana and a loaded firearm).

*Kislowski v. Kelley*, 2020 U.S. Dist. LEXIS 17018 (N.D.N.Y. 2020), a recent decision by this Court, also is distinguishable. In *Kislowski*, the plaintiff asserted a cause of action for malicious prosecution after the New York State Court of Appeals determined that the Violation of Probation petition on which he was prosecuted did not give the plaintiff "proper notice of the manner in which he allegedly violated a condition of his probation…." *Id.* at *13. In granting the defendants' 12(b)(6) motion to dismiss the malicious prosecution claim, this Court noted that there is nothing "that indicates that Plaintiff was innocent." *Id.* at *14. Indeed, while the plaintiff's complaint in *Kislowski* alleged numerous acts of malfeasance by his probation officer in support of the petition to revoke the plaintiff's probation, Kislowski never alleged in his

complaint that he was actually innocent of having violated his probation. *See Kislowski v. Kelley*, 1:19-cv-00218, at ECF Docket No. 1.

Here, unlike in the cases cited above, plaintiff asserts in his complaint not only that the gun in question was obtained illegally, but also that he was never in possession of the gun — allegedly recovered from a trash can—and that he was innocent of the crimes with which he was charged. *See* plaintiff's March 25, 2020 Complaint (ECF Docket No. 1) (hereinafter "Complaint"), at ¶¶ 27-30, 34. In *Graham v. City of New York*, 2018 U.S. Dist. LEXIS 34554 (E.D.N.Y. 2018), relied upon heavily by defendants, the district court plainly acknowledged that its dismissal of the plaintiff's malicious prosecution claim for lack of favorable termination "is not to say that a conviction reversed on suppression grounds can never support a subsequent claim for malicious prosecution….This might be a different case if Plaintiff had put forth a well-pleaded allegation that he did not, in fact, possess the gun or drug contraband that the police recovered from him during the unlawful search." *Id.* at *15, *17-18.

Indeed, the instant case is indistinguishable from *Smalls v. City of New York*, 181 F. Supp. 3d 178 (E.D.N.Y. 2016), where the plaintiff asserted, *inter alia*, a cause of action for malicious prosecution following the reversal of a conviction of gun possession. In *Smalls*, as here, the plaintiff's conviction was reversed *solely* upon a finding that an unlawful initial pursuit required suppression of evidence (a gun and ammunition) which the officers claimed the plaintiff discarded during the pursuit.

The district court, rejecting the defendants' motion to dismiss for lack of favorable termination, wrote:

> The Appellate Division here found that the plaintiff was not behaving suspiciously and, therefore, the initial pursuit was unlawful. *People v. Smalls*, 83 A.D.3d 1103, 1104, 922 N.Y.S.2d 461 (2011). That the officers lacked reasonable suspicion for the stop in no way affirms that plaintiff was guilty of the underlying crimes, and it would be entirely consistent for the plaintiff to have also been innocent. If what plaintiff avers is true—that he had no weapon, that he gave no one a weapon, that he made no inculpatory statements, and that he dropped no ammunition—then the officer's testimony to the contrary cannot be used to stamp out the claim before it can take root. A contrary rule would permit a reversed conviction that was based on false testimony to categorically prevent a malicious prosecution inquiry, which is surely not the law's intent in recognizing malicious prosecution as a tort. In this light, the malicious prosecution claim against Officer Collins survives.

*Id.* at 188.

Here, the Appellate Division found that the vague description of a "black male" provided by the radio dispatch also did not support reasonable suspicion to pursue plaintiff. *See People v. Jones*, 174 A.D.3d 1532, 1533-34 (4th Dept. 2019). Similarly, once evidence of the gun—which plaintiff denies ever possessing, much less discarding, and which was never found on his person—was suppressed, the *only* evidence to support the mere possibility that plaintiff was not innocent was the officer's self-serving testimony. Defendants would have it that the Appellate Division's recitation of the record from the suppression hearing, whose "facts" concerning plaintiff's possession and discarding of the weapon again came exclusively from the officer's testimony, somehow amounts to an issue-precluding wave of the hand. In *Smalls*, the court rejected an identical argument made by the defendant: "The Court is not unmindful that the Appellate Division appears to have credited the officer's testimony that Smalls possessed a gun, but such credit in the background summary was immaterial to the reversal, which was founded on events that preceded the alleged gun encounter. It in itself, in short, is not a finding that Smalls possessed a gun." *Id.* at 188 n.6. Here, too, the Appellate Division's assumption, for the purposes of the issue on appeal, that plaintiff discarded a gun into a trash bin was likewise

immaterial to the reversal, which also was founded on events that preceded the alleged recovery of the gun. *See People v. Jones*, 174 A.D.3d at 1535.

Plaintiff's malicious prosecution claim, as pled, not only presents a scenario not inconsistent with plaintiff's innocence, *see Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001), but it also affirmatively asserts plaintiff's innocence. The vacatur of plaintiff's conviction, in conjunction with plaintiff's well-pled denial that he ever possessed the gun and that he was innocent of the crimes with which he was charged, is sufficient to survive defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Cf. Thompson v. City of New York*, 2020 U.S. Dist. LEXIS 77663, at *8 (S.D.N.Y. 2020) (malicious prosecution claim could have survived "if Plaintiff had put forth a well-pleaded allegation that he did not, in fact, possess the gun or contraband that the police recovered from him during the unlawful search," but plaintiff "has not affirmatively pled to the contrary."). Here, a jury could certainly credit plaintiff's testimony over the officers' and find, e.g., that the officers recovered a gun from a nearby trash bin and, not knowing who, if any, of the eight black men on the scene or hundreds of individuals living in the apartment complex it may have belonged to, claimed that it was plaintiff who discarded it there in order to retroactively justify their wrongful, indiscriminate pursuit and arrest. Therefore, taking all facts alleged in the complaint as true and drawing all reasonable inferences in favor of plaintiff, as the Court must do on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), *Curto v. Roth*, 2003 U.S. Dist. LEXIS 29799, at *3 (N.D.N.Y. 2003) (Scullin, J.) (citation omitted), plaintiff's claim for malicious prosecution under New York State law should survive and defendants' motion to dismiss on this basis should be denied.

II.   **Plaintiff's denial of right to fair trial/fabrication of evidence claim must survive because, under *McDonough v. Smith*, *Heck v. Humphrey*, and Second Circuit precedent governing the elements of § 1983 evidence-fabrication claims, which *McDonough* expressly left unchanged, plaintiff's complaint states a viable claim**

Defendants' motion to dismiss plaintiff's fair trial/evidence fabrication claim on the ground that plaintiff did not receive a "favorable" termination of the underlying criminal proceeding should be rejected. First, *McDonough* did not add "favorable termination" as an element of a cause of action for denial of right to a fair trial. Second, even were one to interpret *McDonough* as adding such an element, "favorable termination" within the meaning of a "fair trial" claim is not the same as "favorable termination" within the meaning of a federal "malicious prosecution" claim. Third, imposing federal malicious prosecution's requirement of a termination indicative of innocence on fair-trial claims would lead to intolerable practical outcomes.

A.   ***McDonough* did not add "favorable termination" as an element of a § 1983 fair-trial/evidence-fabrication claim**

The Court in *McDonough* explicitly disclaimed any intention of changing the elements of § 1983 evidence-fabrication claims in this Circuit. *See McDonough*, 139 S. Ct. at 2156 n.3 (declining "to opine on what the elements of a constitutional malicious prosecution action under § 1983 are or how they may or may not differ from those of a fabricated-evidence claim"). Rather, in *McDonough*, "[t]he question [wa]s when the statute of limitations began to run" on the plaintiff's claimed violation of his "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer." 139 S. Ct. at 2155 (internal quotation marks omitted).

In determining the appropriate "accrual rule" for evidence-fabrication claims, *id.* at 2159, the Court "assum[ed] without deciding that *the Second Circuit's articulations of the right at issue and its contours are sound*, having not granted certiorari to resolve those separate

questions," *id.* at 2155 (emphasis added). That the Court did not seek to determine the elements of the claim is even clearer when one considers the primary grievance expressed by the dissenters: that it was improvident for the majority to decide the claim's statute of limitations *before determining its elements. See id.* at 2162 (Thomas, J., with whom Kagan, J. and Gorsuch, J. joined, dissenting) ("The Court, while recognizing that it is critical to ascertain the basis for a § 1983 claim when deciding how to handle it…assum[ed] without deciding that the Second Circuit's articulations of the right at issue and its contours are sound….Even if the Second Circuit were correct that McDonough asserts a violation of the Due Process Clause, it would be preferable for the Court to determine the claim's elements before deciding its statute of limitations") (internal quotations and citations omitted).[2]

In not changing the elements of an evidence-fabrication claim, but rather deciding the distinct issue of when such a claim *accrues*, the Court in *McDonough* followed the same approach it took in the decision upon which it heavily relied, *Heck v. Humphrey*, and numerous subsequent decisions applying *Heck. Heck* involved a § 1983 plaintiff who sought damages for evidence destruction while he was still in prison on the underlying conviction. 512 U.S. at 479. The Court worried that such a lawsuit violated "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal convictions," conflicted with the Court's "concerns for finality and consistency," and made an end- run around

---

[2]     Indeed, it was precisely the wish of the petitioner in *McDonough* that the Court not first determine the elements of the claim. *See* Brief for the Petitioner, p. 19, *McDonough v. Smith*, 139 S. Ct. 2149 (2019) ("The Court thus does not need to delve into what the elements of McDonough's constitutional claim are"). If the Court were to delve into the elements, *McDonough* feared, the Court could have sent the case back to the Second Circuit and directed the lower court to clarify the elements of the claim. Instead, the petitioner wanted the Court to walk a tightrope: "assume without deciding" that McDonough stated a legitimate claim, while also analogizing the claim *only for accrual purposes* to malicious prosecution. After all, it would have been risky for the petitioner were the Court to agree that his fabrication of evidence claim was analogous to a malicious prosecution claim not only for accrual purposes, but also with respect to the substantive elements of both claims. Would petitioner then have to prove malice? This was a chance he did not want to take. *See id.* at 37-38 n. 11 ("This is not to say, of course, that the Court should adopt *all* the elements of malicious prosecution….In order to answer the question presented in this case—which concerns only accrual—the Court need not determine what the other elements of McDonough's Section 1983 claim would be on the merits") (emphasis in original) (internal quotations and citations omitted). McDonough succeeded and got his wish: a finding that his fabrication of evidence claim was *timely*, but no finding, as the Court made clear, as to the *elements* of such a claim.

Congress's choice that habeas corpus, with its strict procedural rules, be the sole basis for challenging the constitutional validity of an existing state criminal conviction. *Id.* at 484–87. Based on these concerns, the Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, . . . a § 1983 plaintiff must prove that the conviction or sentence has been *reversed on direct appeal*, expunged by executive order, *declared invalid by a state tribunal authorized to make such determination*, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87 (emphasis added). Put differently, a § 1983 action whose success "would *necessarily imply the invalidity of [a] conviction or sentence*" cannot proceed "unless . . . the conviction or sentence has already been invalidated." *Id.* at 487 (emphasis added). But if success in the § 1983 action "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.*

B. **Even were one to construe *McDonough* as having added "favorable termination" as an element of a fabricated-evidence claim, such an element is not equivalent to "favorable termination" as understood in the context of a malicious prosecution claim**

Since the Court in *McDonough* assumed the soundness of evidence-fabrication claims under Second Circuit law, which has never required a final result that is indicative of innocence, it makes no sense to conclude that the Court, *sub silentio*, meant to impose such a new element. It makes even less sense to conclude that the Court intended to add an element that is fundamentally inconsistent with the constitutional tort's purpose of deterring fabrication of evidence *regardless* of whether the accused ultimately is determined to be fully innocent. Existing Second Circuit law defining the elements of evidence-fabrication therefore still controls, and a district court "should follow the case which directly controls, leaving to [the higher] court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (citation omitted).

The elements of a § 1983 evidence-fabrication claim are well established in this Circuit: a criminal defendant is deprived of his constitutional "right to a fair trial" when "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).[3] The Second Circuit has never imposed a sixth element requiring a plaintiff to present

---

[3]     Defendants' argument that plaintiff's claim should be dismissed as duplicative of his Fourth Amendment malicious prosecution claim, *see* City's Memorandum of Law in Support, at p. 21, should be summarily rejected. The *McDonough* Court, noting that a right may originate under more than one amendment, declined to rule on the question of what amendment a fair-trial/evidence-fabrication claim originates under. *See McDonough*, 139 S. Ct. at 2155 n.2. In fact, it assumed without deciding that the Second Circuit's determination that McDonough's claim originated in the right to due process of law was sound, and the Second Circuit has defined this fair-trial right as being "rooted in the Sixth Amendment or the Fifth or Fourteenth Amendments, or both." *Garnett*, 838 F.3d at 278 n.6. In *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), which defendants rely on for their argument, the Supreme Court plainly stated that "[a] person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." 137 S. Ct. at 920 n.8. In *Dufort v. City of New York*, 874 F.3d 338 (2d Cir. 2017), also relied upon by defendants, the court only subsumed the plaintiff's substantive due process clause into his Fourth Amendment claim insofar as the fabricated evidence did not "precipitate [a] sequence of events that result[ed] in a deprivation of [the plaintiff's]

evidence that the underlying criminal case terminated in his favor.  On the contrary, "[s]ection 1983 liability attaches for knowingly falsifying evidence even where there simultaneously exists a lawful basis for a deprivation of liberty." *Victory v. Pataki*, 814 F.3d 47, 64 (2d Cir. 2016). Accordingly, courts in this Circuit do not apply malicious prosecution's strict affirmative-indication-of-innocence requirement to evidence-fabrication claims, *see Garnett*, 838 F.3d at 279, or to other subspecies of fair-trial claims, such as violations of *Brady*, *see Poventud v. City of New York*, 750 F.3d 121, 133–35 (2014).[4] Indeed, in *Poventud*, the en banc court allowed a plaintiff's § 1983 claim for a *Brady* violation to proceed even though, after the challenged conviction had been overturned due to the *Brady* violation, he had pled guilty to a lesser offense—a termination that certainly did not affirmatively indicate his innocence. *See id.* at 130–34 (explaining that a *Brady* claim could go forward even though a malicious-prosecution claim would be barred).

Section 1983 fair-trial claims are fundamentally different from § 1983 malicious-prosecution claims. The two types of claims "arise out of different constitutional rights, protect against different constitutional injuries, and implicate different constitutional concerns." *Simon v. City of New York*, 2020 U.S. Dist. LEXIS 47919, at *17 (E.D.N.Y. 2020) (Garaufis, J.). Malicious-prosecution claims are rooted in the Fourth Amendment's prohibition on

---

liberty," 874 F.3d at 355 (internal quotations and citation omitted), which is not the case here, just as it was not the case in *Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019), wherein the Second Circuit distinguished a fair-trial claim predicated on fabricated evidence which lead to a conviction from those predicated on unsuccessful, mere attempts to fabricate evidence, like that in *Dufort*.

[4]     Evidence-fabrication claims and *Brady* claims are closely related. *Ricciuti,* which is the Second Circuit's seminal evidence-fabrication case, drew directly from the Supreme Court's *Brady* jurisprudence in stating that "a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" *Ricciuti*, 124 F.3d at 130 (citing *United States v. Agurs*, 427 U.S. 97, 104 (1976); and *Giglio v. United States*, 405 U.S. 150, 153 (1972)). Both types of claims are rooted in "the right to have one's case tried based on an accurate evidentiary record that has not been manipulated by the prosecution [or police]." *Dufort v. City of New York*, 874 F.3d 338, 355 (2d Cir. 2017) (citing both *Brady* and *Garnett*). Indeed, a *Brady* violation is "tantamount to fabricating false evidence," for it "deceive[s] the jury into thinking that evidence of guilt [i]s stronger than it [i]s." *Poventud*, 750 F.3d at 140 (Lynch, J., concurring).

"unreasonable seizure[s]." *Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018). "The essence" of such claims "is the alleged groundless prosecution." *Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir. 1980). Because the government's mere "failure to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution,'" *Lanning*, 908 F.3d at 28 (quoting *Conway v. Village of Mount Kisco*, 750 F.2d 205, 215 (2d Cir. 1984)), a plaintiff bringing a § 1983 malicious-prosecution claim must show "that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence," *id.* at 22.

On the other hand, "fair trial claims cover kinds of police misconduct not addressed by…malicious prosecution claims." *Garnett*, 838 F.3d at 278. A fair-trial claim, unlike a claim for malicious prosecution, may proceed despite the existence of probable cause. *Id.* at 277–78; *Bermudez v. City of New York*, 790 F.3d 368, 374–77 (2d Cir. 2015). That is because fair-trial claims address a different evil: the corruption of due process by government misconduct, including the withholding of favorable evidence under *Brady* and the related evil of fabricating evidence. "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Evidence fabrication is "definitionally unreasonable," regardless of how the prosecution ends. *Simon*, 2020 U.S. Dist. LEXIS at *17.

Although the *McDonough* court analogized an evidence-fabrication claim to common-law malicious prosecution, it did not *incorporate* into evidence-fabrication claims the favorable-termination-indicative-of-innocence requirement from malicious prosecution. Such an interpretation of *McDonough* misreads its actual holding and ignores the doctrinal and policy concerns underpinning it.

Rather, in analogizing to malicious prosecution, the *McDonough* Court again followed the same approach and adopted the same reasoning that the Court previously had in *Heck*, *see* 139 S. Ct. at 2156–57, whose reliance on the same analogy did not graft malicious prosecution's

favorable-termination element onto the claims of § 1983 plaintiffs asserting that they were damaged by unfair trials. The Court in *Heck*, as a starting point for determining the "prerequisites" for recovering damages under § 1983, followed its usual practice of "look[ing] first to the common law of torts" for guidance. *Heck v. Humphrey*, 512 U.S. 477, 483 (1994). It concluded that "malicious prosecution provides the closest analogy" to Heck's claims because both "permit[] damages for confinement imposed pursuant to legal process." *Id.* at 484. It focused in particular on the element of malicious prosecution requiring "termination of the prior criminal proceeding in favor of the accused," because this element embodied the judicial policies that the Court was most concerned with—the avoidance of "parallel litigation" and "conflicting resolutions." *Id.* (internal quotation marks omitted).

In "rel[ying] on malicious prosecution's favorable termination requirement *as illustrative of* the common-law principle barring tort plaintiffs from mounting collateral attacks on their outstanding criminal convictions," *id.* at 486 n.4 (emphasis added), *Heck* never adopted wholesale malicious prosecution's favorable-termination requirement for all § 1983 lawsuits challenging convictions. Instead, it crafted an accrual rule designed to avoid inconsistent results and new avenues of collateral attack. *Heck* made clear that there was no problem at all unless the success of the § 1983 action "would necessarily imply the invalidity of [a] conviction or sentence." *Id.* Where that was the case, the *Heck* favorable-termination requirement would be satisfied when the inconsistent judgment was invalidated. There was no requirement that it be overturned on a ground indicative of innocence.[5]

*Heck* and related cases are an "exception from § 1983's otherwise broad scope." *McKithen v. Brown*, 481 F.3d 89, 99 (2d Cir. 2007) (quoting *Wilkinson v. Dotson*, 544 U.S. 74,

---

[5]  Although *Heck* itself did not use the term "favorable termination" to describe its holding, both the Supreme Court and the Second Circuit Court of Appeals have since referred to *Heck*'s "favorable-termination" rule. *See McDonough*, 139 S. Ct. at 2157; *Muhammad v. Close*, 540 U.S. 749, 754 (2004); *see also, e.g.*, *Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006).

79 (2005)). "Over time, this implicit exception has been carefully circumscribed." *Id.* at 101 (citing *Dotson*, 544 U.S. at 79). In subsequent cases, the Court's narrow focus continued to be, not innocence, but rather whether a claim, if successful, would necessarily impugn an existing state judgment or decision. Thus, where a claim did not call into question the result of a judgment or decision that was still in place, there was no *Heck* problem. *See, e.g., Skinner v. Switzer*, 562 U.S. 521, 525, 534 (2011) (holding that *Heck* does not preclude a prisoner from suing under § 1983 to seek DNA testing because the test results would not "necessarily" imply the invalidity of a conviction or sentence); *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (holding that *Heck* does not bar "a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence"); *Edwards v. Balisok*, 520 U.S. 641, 645–49 (1997) (holding that *Heck* permits a procedural claim that does not imply that the underlying conviction is invalid). Indeed, in *Skinner*, it was precisely because of the possibility the DNA results would show the defendant was *guilty*, not innocent, and thus would not *necessarily* impugn his conviction, that there was no *Heck* bar. *See* 562 U.S. at 534. Applying this framework (and relying on *Poventud*), the Ninth Circuit has held that *Heck* does not bar a § 1983 plaintiff from bringing suit for damages caused by a *Miranda* violation at his initial murder trial, even though he subsequently was convicted of the *same offense* at a retrial without the use of the improperly-obtained statement, because a judgment in the plaintiff's favor would not imply the invalidity of the second conviction. *Jackson v. Barnes*, 749 F.3d 755, 760–61 (9th Cir. 2014).

*McDonough* did not broaden the Court's approach to the accrual rule announced in *Heck*; rather, it merely extended the rule to situations where the plaintiff suffered a deprivation of liberty during a pending prosecution that ended without a conviction. *See McDonough*, 139 S. Ct. at 2157 (noting that the facts "differ[] from *Heck* because the plaintiff in *Heck* had been convicted, while McDonough was acquitted"). The Court reasoned that McDonough's § 1983 claims "challenge[d] the validity of the criminal proceedings against him in essentially the same manner as the plaintiff in *Heck* challenged the validity of his conviction." *Id.* at 2158. It made

sense to delay accrual—until the prosecution had ended in the plaintiff's favor as opposed to the overturning of the conviction required by *Heck*—in order to avoid undesirable "parallel criminal and civil litigation" as well as possible "conflicting civil and criminal judgments." *Id.* at 2157–58 (citing *Heck*, 512 U.S. at 484). Accordingly, the Court held that a § 1983 evidence-fabrication claim does not accrue unless the plaintiff can show that the underlying "criminal proceeding has ended in [his] favor, *or* a resulting conviction has been invalidated within the meaning of *Heck.*" *Id.* at 2158 (emphasis added). In either scenario, "in the plaintiff's favor," or "favorable termination," does not mean a showing of innocence—such a substantive requirement would be a radical break with the *Heck* line of cases upon which *McDonough* is based—but only that the lawsuit does not necessarily impugn an existing prosecution or conviction.

To have held otherwise would have been a failure to heed the Supreme Court's own repeated cautions, including in *McDonough* itself, against collapsing elements of common-law torts into § 1983 claims. However useful common-law analogies may be, they are "'meant to guide rather than to control the definition of § 1983 claims,' such that the common law serves 'more as a source of inspired examples than of prefabricated components.'" *McDonough*, 139 S. Ct. at 2156 (quoting *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017)). "[T]wo constitutional claims may differ yet still both resemble malicious prosecution more than any other common-law tort; comparing constitutional and common-law torts is not a one-to-one matching exercise." *Id.* at 2156 n.5; *see also, e.g.*, *Rehberg v. Paulk*, 566 U.S. 356, 366 (2012) (noting that § 1983 is not "a federalized amalgamation of pre-existing common-law claims").

Further, "[i]n applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue." *Manuel*, 137 S. Ct. at 921. As discussed above, the constitutional torts of evidence fabrication and malicious prosecution "arise of out different constitutional rights, protect against different constitutional injuries, and implicate different constitutional concerns." *Simon v. City of New York*, 2020 U.S.

Dist. LEXIS 47919, at *16-17 (E.D.N.Y. 2020). It therefore does not make sense to impose the same common-law rules on both types of claims.

That *McDonough* did not intend a result indicative of innocence to be required for evidence-fabrication claims is further made clear by footnote three of the opinion. There, the Court noted that, in *Manuel*, it left open whether a Fourth Amendment claim for pretrial detention, known loosely as a "malicious prosecution" claim, has a favorable-termination element at all, unlike its common-law analogue. *McDonough*, 139 S. Ct. at 2156 n.3 (citing *Manuel*, 137 S. Ct. at 921-22). Having noted that it had declined to reach the question of whether a favorable termination indicative of innocence is an element of a § 1983 claim for malicious prosecution when the issue was directly raised in *Manuel*, the Court surely did not intend to *sub silentio* adopt or imply such a requirement for evidence-fabrication claims in *McDonough*.[6]

The two circuits that have addressed this issue since *McDonough* was decided both agree that *McDonough*'s analogy to malicious prosecution, and its holding that a fair trial claim accrues only upon a favorable termination, does not require that such termination affirmatively indicate innocence. In *Roberts v. City of Fairbanks*, the State of Alaska offered to vacate four men's murder convictions if they would enter into a "settlement agreement" stating that "the original…judgments of conviction were properly and validly entered." 947 F.3d 1191, 1195 (9th Cir. 2020). The men agreed, the convictions were vacated, and all charges were dismissed. *Id.* The district court dismissed their subsequent § 1983 fair-trial/evidence-fabrication lawsuit on *Heck* grounds, "holding that vacatur of convictions pursuant to a settlement agreement was insufficient to render the convictions invalid." *Id.* at 1196.

---

[6]     On remand from the Supreme Court's decision in *Manuel*, the Seventh Circuit held that there is no favorable-termination requirement for malicious prosecution–type § 1983 claims beyond the need to show, in accordance with *Heck*, that one's conviction or imprisonment has previously been invalidated. *See Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018). Of course, the rule in this Circuit is different. *See Lanning*, 908 F.3d at 22. Whichever view is correct, the point is that the Supreme Court surely did not intend *McDonough* to resolve the issue it had expressly left open in *Manuel*.

The Ninth Circuit reversed. It held that "the plain language of *Heck*" permitted the lawsuit to proceed "[b]ecause all convictions here were vacated and underlying indictments ordered dismissed, [and] there remains no outstanding criminal judgment," thus "render[ing] the *Heck* bar inapplicable." *Id.* at 1198. While one judge dissented, the majority held that the dissent had mischaracterized *McDonough* as holding "that *Heck* establishes an exact replica of the favorable-termination rule from the malicious-prosecution context." *Id.* at 1201 n.11. *McDonough* "holds no such thing," the majority reasoned, emphasizing that such a reading "contravenes the plain language of *Heck*." Id. at 1201, 1201 n.11. In sum, wrote the court: "*Heck*'s favorable- termination requirement is distinct from the favorable-termination element of a malicious-prosecution claim." *Id.* at 1201.

The en banc Seventh Circuit took the same view in *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020), petition for cert. on other grounds filed, *Cannon v. Savory*, No. 19-1360 (June 5, 2020), a case which defendants incorrectly cite as supporting their argument. *See* City's Memorandum of Law in Support, at p. 13. *Savory* involved a plaintiff who spent 30 years in prison for murder before the governor pardoned him. *See* 947 F.3d at 411-12. When Savory then brought a § 1983 suit alleging evidence fabrication, *id.* at 412, the defendants claimed, among other things, that *Heck* barred the suit because the governor's "general pardon" was not "based on innocence," *id.* at 429. The en banc court held that there was "no support in *Heck*" for this view. *Id. Heck* "offered a list of possible resolutions that would satisfy the favorable termination requirement, and none require an affirmative finding of innocence." *Id.* "If the [*Heck*] Court had wanted to specify that [a favorable termination] must be based on innocence, it certainly could have done so, but it did not." *Id.* Nor did *McDonough* change this rule, said the Seventh Circuit; on the contrary, *McDonough* held "that acquittal is a favorable termination under *Heck* . . . , *another resolution that does not necessarily imply innocence*." *Id.* (emphasis added).

Several district courts in this Circuit have issued similarly persuasive decisions adopting this view. In *Ross v. City of New York*, Judge Chen explained that "because fair trial

jurisprudence, starting with *Heck* and continuing through *McDonough*, is primarily concerned with the potential for invalidating criminal convictions, the favorable termination requirement for fair trial claims (assuming there is one) is necessarily different and more expansive than the one for malicious prosecution claims." 2019 U.S. Dist. LEXIS 169762, at *19 (E.D.N.Y. 2019). In *Simon v. City of New York*, Judge Garaufis reached the same conclusion, holding that "*McDonough* does not alter the enduring distinction between malicious prosecution and fair trial claims." 2020 U.S. Dist. LEXIS 47919, at *17 (E.D.N.Y 2020). Other district courts have agreed. *See Colon v. City of Rochester*, 419 F. Supp. 3d 586, 608 n.7 (W.D.N.Y. 2019) (Larimer, J.) (adopting the reasoning and holding of *Ross*); see also *Wellner v. City of New York*, 393 F. Supp. 3d 388, 397 (S.D.N.Y. 2019) (Koeltl, J.) (holding that § 1983 evidence-fabrication claim was not barred by *McDonough* where plaintiff accepted a compromise outcome and pled guilty to the lesser offense of disorderly conduct because, consistent with *Heck*, her claim that evidence pertaining to her misdemeanor charges was fabricated "in no way calls into question her conviction for the [lesser] offense of disorderly conduct").

It is clear that the "favorable-termination" concept, whether the claim is for damages caused by a conviction or by the underlying prosecution itself, is the same. In both *Heck* and *McDonough*, the Court was concerned with avoiding parallel litigation, inconsistent results, and an end-run around habeas. A result that avoids these evils is a "favorable" termination for these purposes and thus allows the former criminal defendant to sue. Under the *Heck* rule, a former criminal defendant may bring a lawsuit challenging the fairness of his conviction upon flawed evidence where such conviction has been overturned for any reason. It would make no sense to impose an additional element relating to innocence merely because the plaintiff's claim, rather than for damages caused by a conviction, is for damages caused by the underlying prosecution itself.[7]

---

[7]     It is possible that a claim of evidence fabrication would impugn a re-prosecution, following the reversal of a conviction, and thus a termination of the re-prosecution in the plaintiff's favor also would be required. *See*

*McDonough* holds that a § 1983 evidence-fabrication plaintiff may bring suit once "the criminal proceeding has ended in the defendant's favor, *or* the resulting conviction has been invalidated within the meaning of *Heck*." 139 S. Ct. at 2158 (emphasis added). This disjunctive formulation covers those cases in which the plaintiff never was convicted, as in McDonough's case, while reaffirming the traditional case contemplated in *Heck* in which the fabrication led to a conviction that was later invalidated. Here, plaintiff's case fits easily into the second of the two alternative prongs of the *McDonough*'s disjunctive rule. Unlike the plaintiff in *McDonough*, but just like the plaintiff in *Heck*, plaintiff's claim challenges his conviction for gun possession and the damages it caused, not the underlying proceeding. Plaintiff's claim accrued when his gun-possession conviction was "invalidated within the meaning of *Heck*." 139 S. Ct. at 2158. His gun-possession conviction was "invalidated within the meaning of *Heck*" when the Appellate Division reversed it on direct appeal and dismissed the gun count. *See Heck*, 512 U.S. at 487 (holding that a plaintiff can bring a § 1983 suit once his conviction has been "reversed on direct appeal"). At that point, there no longer was any possibility that plaintiff's claim would impugn an existing conviction or the basis for an ongoing prosecution. The decades-old rule of *Heck* still applies: proof that his conviction has been invalidated, however that happened, suffices by itself to lift the *Heck* bar. *McDonough* requires nothing more. Defendants' motion to dismiss on this basis should therefore be rejected in its entirety.

*Bradford v. Scherschligt*, 803 F.3d 382, 388–89 (9th Cir. 2015) (holding that § 1983 evidence-fabrication claim did not accrue when plaintiff's initial conviction was vacated but instead only upon his acquittal at the retrial). However, where, as here, an appellate court not only has reversed the conviction but also has dismissed the underlying charges that gave rise to the plaintiff's civil claim, such claim unquestionably has accrued under *McDonough*.

C.  **Imposing the federal malicious prosecution's requirement of a termination indicative of innocence on fair-trial claims would lead to intolerable practical outcomes**

To hold that fair-trial and evidence-fabrication claims require a termination affirmatively indicating factual innocence would defeat one of § 1983's primary purposes: "deterrence of future abuses of power by persons acting under color of state law," such as evidence fabrication. *Restivo v. Hessemann*, 846 F.3d 547, 585 (2d Cir. 2017) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 (1981)). Emboldened by the lack of legal consequences, police officers and prosecutors would be more likely to manufacture false evidence or knowingly rely upon it to shore up weak or marginal cases.[8] *See* Amicus Br. of Ctr. on the Admin. of Crim. Law at NYU School of Law et al. in *McDonough v. Smith*, 2019 U.S. S. Ct. Briefs LEXIS 845, at 10. "Section 1983 suits are necessary to deter prosecutors from fabricating evidence." *Id.* (collecting studies). While theoretically there is a risk of criminal prosecution or bar discipline for prosecutors who knowingly rely on fabricated evidence, the threat "is too remote to affect their behavior." *Id.* at 10-11.

Requiring evidence-fabrication plaintiffs to show that the resolution of the criminal case affirmatively indicates their innocence also would pressure criminal defendants in plaintiff's position—*i.e.*, those who know the police have fabricated evidence against them and have strong grounds for a potentially case-dispositive suppression motion—to forego the motion and risk a trial to preserve any ability to later seek damages through a civil rights lawsuit. Any defendant hoping to obtain compensation for the horror of imprisonment based upon an unconstitutionally-obtained conviction, no matter how innocent he might be, would have to think twice about appealing on any ground that, if successful, would not establish that innocence. Indeed, the only

---

[8]     Although prosecutors are absolutely immune from liability for "[a]ctions taken as an advocate," they enjoy only qualified immunity for "actions taken as an investigator." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000). A prosecutor's "fabrication of evidence" is likely to be considered investigatory. *See Fields v. Wharrie*, 740 F.3d 1107, 1113 (7th Cir. 2014) (Posner, J.) (holding that a prosecutor could be sued under § 1983 when he, "acting pre-prosecution as an investigator, fabricate[d] evidence and introduce[d] the fabricated evidence at trial").

qualifying grounds that come to mind under New York law would be a claim that the evidence was legally insufficient or that the verdict was against the weight of the evidence; a claim citing prosecutorial or judicial misconduct, a *Brady* or discovery violation, an erroneous evidentiary ruling, or any other procedural defect, would not suffice. Yet the Supreme Court has long held that it is "intolerable that one constitutional right should have to be surrendered in order to assert another." *Simmons v. United States*, 390 U.S. 377, 394 (1968). Criminal defendants should not be required to forfeit their Fourth Amendment right against illegal search or seizure— or their panoply of other procedural and evidentiary rights under the Fifth, Sixth, and Fourteenth Amendments—to preserve § 1983 claims for evidence fabrication.[9]

Adopting *Lanning*'s favorable-termination rule in evidence-fabrication cases would collapse the distinction between the constitutional torts of malicious prosecution and evidence fabrication, notwithstanding two decades of Second Circuit caselaw *insisting* on this distinction. Allowing government officials to fabricate evidence without facing civil consequences "would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice." *Ricciuti*, 124 F.3d at 130; *see generally* Amicus Br. of ACLU et al. in *Smalls v. City of New York*, 20-1099 (2d Cir. 2020).

Plaintiff alleges that police officers fabricated the evidence which helped secure his indictment when they allegedly recovered a gun from a trash can and accused him of having been the possessor of the gun. Plaintiff's conviction on that count has now been overturned within the meaning of *Heck* and in compliance with the principles underlying and ruling elicited in *McDonough*. When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the

---

[9]   This case does not involve another scenario envisioned by the *McDonough* Court: that prosecutors, who have "broad discretion over such matters as the terms on which pleas will be offered or whether charges will be dropped," 139 S. Ct. at 2160 n.10, would be able to insulate government officials (and their municipal employers) from civil liability by insisting that the accused pled guilty to a lesser offense as the price for dismissal of more serious charges premised on fabricated evidence. Whether there should be an exception to the *Heck* bar to § 1983 liability where a prosecutor misuses her power in this fashion to extort a guilty plea on a minor charge, as the footnote cited above suggests, is not presented in this case, where all charges were dismissed.

21

Court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Curto*, 2003 U.S. Dist. LEXIS, at *3. Accordingly, and for the foregoing reasons, plaintiff's fabrication of evidence/denial of right to fair trial claim must survive, and defendants' motion to dismiss on this basis should be denied in its entirety.

## CONCLUSION

The underlying criminal proceeding in plaintiff's case resulted in a "favorable termination" as that term is understood within the meaning of a state-law malicious prosecution claim. Unlike the cases cited by defendants, wherein the plaintiffs never disputed that they possessed the suppressed evidence and never otherwise maintained their innocence, plaintiff herein adamantly denies that he ever possessed the gun that was suppressed, and he steadfastly maintains his innocence of the crimes with which he was charged.

Further, importing malicious prosecution's narrow definition of favorable termination into evidence-fabrication claims would contradict this Circuit's settled precedent, and *McDonough* did not overrule or cast doubt on these precedents. To import that narrow definition would *conflict* with the holdings of both *McDonough* and *Heck* and the underlying rationales for these decisions. Moreover, it would defeat the deterrent and remedial purposes of § 1983 evidence-fabrication actions and encourage the "mockery . . . of due process of the law and fundamental justice" that the Second Circuit sought to curtail in *Ricciuti*.

For the reasons stated herein, defendants' motion to dismiss, to the extent opposed by plaintiff, should be denied in its entirety.

Dated: New York, New York
      August 6, 2020

s/ Edward Sivin
Sivin & Miller, LLP
Bar Roll Number: 514765
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
Telephone: (212) 349-0300
E-mail: esivin@sivinandmiller.com

22